## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| DECURTIS HOLDINGS LLC, *et al.*,[1] | ) Case No. 23-10548 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL OBLIGATIONS ARISING THEREUNDER, (B) RENEW, REVISE, EXTEND, SUPPLEMENT OR ENTER INTO NEW INSURANCE POLICIES, AND (C) CONTINUE THEIR INSURANCE PREMIUM FINANCING PROGRAM; AND (II) GRANTING RELATED RELIEF**

By this motion (the "Motion"), the above-captioned debtors and debtors in possession (the "Debtors") seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order"), respectively, pursuant to sections 105, 361, 362, 363, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing, but not directing, the Debtors to (a) maintain their existing insurance policies and pay all obligations arising thereunder or in connection therewith (collectively, the "Insurance Obligations") and b) renew, revise, extend, supplement or enter into new insurance coverage as needed in their business judgment, (c) continue their insurance premium financing program and renew or enter into new premium financing programs as necessary under substantially similar

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: DeCurtis Holdings LLC (2384) and DeCurtis LLC (9241). The location of the Debtors' service address in these chapter 11 cases is 3208 East Colonial Drive, Suite C190, Orlando, FL 32803.

terms; and (ii) granting related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Michael Atkinson in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors, by and through their undersigned proposed counsel, respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105, 361, 362, 363, 1107 and 1108 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004.

## GENERAL BACKGROUND

4.      On April 30, 2023 (the "Petition Date"), the Debtors commenced these chapter 11 cases by filing petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No official committees have been appointed in these Chapter 11 Cases and no

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

request has been made for the appointment of a trustee or examiner.

6.      A detailed description of the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the facts and circumstances supporting this Motion, are set forth in greater detail in the First Day Declaration and incorporated by reference herein.

## FACTS RELEVANT TO THIS MOTION

7.      The Debtors maintain various insurance policies providing coverage for, among other things, commercial property and product liability, maritime general liability and maritime employer liability, directors' and officers' liability, general liability and product liability, and excess  liability (each an "Insurance Policy," collectively, the "Insurance Policies," and, collectively with the financing agreements, the "Insurance Program").[3]  The Insurance Policies are obtained from various insurance carriers (each an "Insurance Carrier" and, collectively, the "Insurance Carriers").  A comprehensive list of each Insurance Policy, including its coverage type, provider, policy term, and policy number can be found attached to the Interim Order and Final Order as Schedule 1.[4]

8.      The aggregate amount of annual premiums on account of the Debtors' Insurance Policies is approximately $173,460 (including premiums the Debtors have already paid to date).

---

[3]     In addition to the Insurance Policies listed on Schedule 1, the Debtors maintain an insurance policy with respect to the Debtors' workers' compensation program (the "Workers' Compensation Program"), which is described in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefit Programs, and (II) Granting Related Relief* (the "Wages Motion"), filed contemporaneously herewith.  Except as otherwise set forth herein, any relief requested with respect to the Workers' Compensation Program is requested in the Wages Motion.

[4]     The Debtors believe that Schedule 1 is a complete list of their Insurance Policies.  To the extent that any Insurance Policy has been inadvertently omitted from that list, the Debtors request that the Order granting the relief sought herein apply to any and all of Debtors' Insurance Policies.  Additionally, the descriptions of the Insurance Policies are intended only as a summary, and the actual terms of the Insurance Policies shall govern in the event of any inconsistency with the descriptions set forth herein.

The premiums for the Debtors' Insurance Policies are paid upfront annually or through quarterly installment payments, except with respect to those that are financed.  As of the Petition Date, the Debtors are current on all amounts owed on account of the Insurance Policies.  However, the estimated prepetition amount accrued, but not yet owing, in connection with the Insurance Program is approximately $36,600.  The Debtors request authority to continue to pay their obligations on account of the Insurance Program in the ordinary course.

9.      In the ordinary course of business, the Debtors obtain brokerage services from Rahn & Associates, Insurance Source, Southeast Insurance Group, and Lockton Companies, LLC (the "Brokers").  The Brokers assist the Debtors in obtaining comprehensive insurance for the Debtors' operations by, among other things, assisting the Debtors with the procurement and negotiation of the Insurance Policies and enabling the Debtors to obtain those policies on advantageous terms at competitive rates.  The Brokers are commissioned by the carriers and therefore, the Debtors do not directly pay the Brokers' fees (the "Brokers' Fees").  As of the Petition Date, the Debtors are current on all of their Insurance Obligations (including Brokers' Fees) and do not believe any outstanding prepetition amounts are due and owing.  However, out of an abundance of caution, the Debtors request authority to continue to pay any Insurance Obligations in the ordinary course of business.

10.     Three of the Insurance Policies (collectively, the "Financed Policies") are financed through the insurance premium financing agreements (the "Financing Agreements") maintained with IPFS Corporation ("IPFS") and PREMCO Financial Corporation ("PREMCO," and together with IPFS, the "PFA Lenders").  The Debtors believe that it is economically beneficial to finance the premiums rather than pay in a lump sum.  Pursuant to the Financing Agreements, the PFA Lenders have agreed to pay the insurance premiums due under the Financed Policies in exchange

for an aggregate upfront payment, and monthly payments from the Debtors.  Under the Financing Agreements, the Debtors paid a down payment of approximately $67,990.95 to IPFS and approximately $13,471.99 to PREMCO.  As of the Petition Date, the Debtors do not believe that any accrued prepetition payments are due and owing on account of the Financing Agreements.  However, out of an abundance of caution, pursuant to this Motion, the Debtors are seeking authority to honor any prepetition obligations related to the Financing Agreements.  The Financed Policies are essential to the Debtors' businesses during these Chapter 11 Cases.  The Debtors seek authority to perform under and satisfy obligations related to the Financing Agreements in the ordinary course of business to ensure uninterrupted coverage under the Insurance Policies and related services.

11.    It is critical that the Debtors maintain the Insurance Policies.  If the Debtors are unable to make payments that will become due after the Petition Date on account of the Insurance Policies, the unpaid Insurance Carriers may seek relief from the automatic stay to terminate such Insurance Policies.  The Debtors would be required to obtain replacement insurance on an expedited basis and at a significant cost to the estate.  If the Debtors were required to obtain replacement insurance, the cost likely would be greater than what the Debtors currently pay.  Even if these Insurance Carriers were not permitted to terminate the agreements, any interruption of payment would have an adverse effect on the Debtors' ability to obtain future policies at reasonable rates.

12.    In light of the importance of maintaining insurance coverage with respect to their business activities, the Debtors believe it is in the best interest of their estates to receive Court approval to honor their obligations under the Insurance Program and, as necessary, renew or enter into new such agreements.

## **RELIEF REQUESTED**

13.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (i) authorizing, but not directing, the Debtors to (a) maintain existing Insurance Policies and to pay in the ordinary course all obligations related to the Insurance Policies (collectively, the "Insurance Obligations"), (b) renew, revise, extend, supplement or enter into new insurance policies, and (c) continue their insurance premium financing program and renew or enter into new premium financing programs as necessary under substantially similar terms; (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto, and (iii) granting related relief.  For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estate, creditors and other parties-in-interest, and therefore, should be granted.

## **BASIS FOR RELIEF**

**I.      The Court Should Authorize, but Not Direct, the Debtors, in their Discretion, to Maintain Existing Insurance Policies and  Make Necessary Payments in Respect Thereof**

14.     The Insurance Policies are essential to the preservation of the value of the Debtors' businesses, properties and assets.  Not only are some of the Insurance Policies required by various regulations, laws and contracts that govern the Debtors' commercial activities, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).  Moreover, the Operating Guidelines for Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines") require the Debtors to maintain insurance coverage throughout the pendency of the Chapter 11 Cases.

15.     Payment of the Insurance Obligations is also authorized under sections 1107 and 1108 of the Bankruptcy Code, which authorizes a debtor to operate its business.  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

16.     Payment of the Insurance Obligations and the renewal, revision, extension, supplementation, or entry into new insurance policies, as needed in the Debtors' business judgment, are necessary to ensure the Debtors' ongoing operations.  As noted above, insurance coverage is required by the U.S. Trustee Guidelines.  Moreover, as a fiduciary for their bankruptcy estates, the Debtors have a duty to maintain the coverage provided under the Insurance Policies in order to preserve the value of the estates.

17.     As described above, non-payment of the Insurance Obligations could result in cancellation of the Insurance Policies, in which case the Debtors would not only be in violation of the U.S. Trustee Guidelines, the laws of various states in which the Debtors operate and various contractual agreements, but also may be unable to find alternative insurance coverage at a reasonable cost.  Therefore, the potential harm that would stem from the cancellation of the Insurance Policies, and failure to renew the Insurance Policies or revise, extend, supplement or enter into new insurance arrangements as needed in their business judgment, would far outweigh the amount of the Insurance Obligations.

18.     Likewise, the services provided by the Brokers are critical to ensuring that the Debtors obtain the necessary insurance coverage on advantageous terms at competitive rates, and the Brokers have significant institutional knowledge regarding the Debtors' insurance needs.  If

the Debtors were forced to replace the Brokers, the Debtors would necessarily be required to spend time and resources getting a new insurance broker up to speed on the Debtors' insurance needs.

19.     Accordingly, to meet their obligations as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, the U.S. Trustee Guidelines and their contracts, the Debtors request authority to pay the Insurance Obligations and to renew, revise, extend, supplement or enter into new Insurance Policies, as needed in their business judgment.  In addition, the Debtors seek authority to renew, revise, extend, supplement or enter into new Insurance Policies, as needed in their business judgment.

20.     Under the "necessity of payment doctrine" and section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtors' estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C. & Sw. Ry.*, 106 U.S. 286, 309 (1882).  The modern application of the doctrine of necessity is largely unchanged from the Supreme Court's reasoning in *Miltenberger.  See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in serious jeopardy."); *see also In re Just For Feet, Inc.*, 242 B.R. 821, 825 (Bankr. D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (holding that a court may authorize a debtor to pay certain prepetition claims so long as a sound business purpose exists and stating that "courts consider a variety of factors, which essentially represent a 'business judgment test'"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994).

21.     Courts in this jurisdiction have authorized similar relief in other chapter 11 cases. *See, e.g.*, *In re Tricida, Inc.*, No. 23-11024 (JTD) (Bankr. D. Del. Feb. 6, 2023) (authorizing debtors to maintain existing insurance policies and pay all existing obligations thereunder); *In re Medly Health Inc.*, No. 22-11257 (KBO) (Bankr. D. Del. Jan. 6, 2023) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 9, 2022) (same); *SportTechie Inc.*, No. 21-11306 (CTG) (Bankr. D. Del. Oct. 26, 2021) (same); *In re Teligent, Inc.*, No. 21-11332 (BLS) (Bankr. D. Del. Oct. 15, 2021) (same).[5]

**II.     The Court Should Authorize, but Not Direct, the Debtors to Make Any Necessary Payments Under the Financing Agreements and Renew the Financing Agreements and/or Enter into New Financing Agreements in the Ordinary Course of Business**

22.     The Debtors request authority, but not direction, to pay any amounts outstanding in connection with the Financing Agreements.  If the Debtors are unable to make any payments that arise under the Financing Agreements, the PFA Lenders may be permitted to terminate the Financed Policies on account of which payment has not been made.  The Debtors would then be required to obtain replacement insurance on an expedited basis and likely at a significantly increased cost.  If the Debtors are required to obtain replacement insurance and to pay a lump sum premium for such insurance in advance, this payment may be the same or greater than what the Debtors currently pay to the PFA Lenders under the Financing Agreements.  Even if the PFA Lenders are not permitted to terminate the relevant Financed Policy, any interruption of payments would severely and adversely affect the Debtors' ability to finance premiums for future policies. Thus, in view of the importance of maintaining the related insurance coverage and preserving their cash flow by financing their insurance premiums, the Debtors believe that it is in the best interest

---

[5]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

of their estates and creditors for the Court to authorize the Debtors to honor their obligations under the Financing Agreements, to the extent any remain outstanding.  Any other alternative would likely require considerable cash expenditures and would be detrimental to the Debtors' chapter 11 efforts.

23.     Each of the Financing Agreements grants the respective PFA Lenders a security interest in certain payments and proceeds under the applicable Financed Policy, including any unearned premiums or other sums that may become payable under the Financed Policies.  Security interests created by premium finance arrangements are generally recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements.  *See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.)*, 67 B.R. 990, 994-95 (Bankr. D. Conn. 1986); *Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.)*, 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981).  Moreover, section 361 of the Bankruptcy Code specifically contemplates providing adequate protection to the extent of the diminution in value of a secured creditor's collateral, and security interests such as those under the Financing Agreements warrant adequate protection in the form of periodic payments pursuant to the terms of the Financing Agreements.  *See, e.g.*, *In re Waverly Textile Processing, Inc.*, 214 B.R. 476, 480 (Bankr. E.D. Va. 1997); *TIFCO, Inc.*, 67 B.R. at 1000.

24.     Therefore, if the Debtors are unable to continue making payments under the Financing Agreements, the PFA Lenders could seek relief from the automatic stay to cancel the respective Financed Policies in accordance with the terms of the Financing Agreements or to seek adequate protection of its respective investment.  *See Universal Motor Express*, 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987) (recognizing that a default under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay).

Accordingly, for the reasons stated herein, the Debtors submit that it is in the best interests of the Debtors and their stakeholders to continue making the premium financing payments and will avoid immediate and irreparable harm to the Debtors' estates.

25.    In addition, the Court should also authorize the Debtors to renew or enter into new premium financing agreements postpetition in the ordinary course of business and consistent with the Debtors' past practice.  Section 363(c)(1) of the Bankruptcy Code provides that "the trustee [or a debtor in possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(b)(1) of the Bankruptcy Code provides that, "[t]he trustee [or debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The Debtors submit that the renewal of the Financing Agreements and/or the execution of new premium financing agreements constitute transactions in the ordinary course of business, within the meaning of section 363(c)(1) of the Bankruptcy Code, that do not require prior bankruptcy court approval.

26.    Neither the Bankruptcy Code nor its legislative history provides a framework for analyzing whether a transaction is in the ordinary course of business.  The Third Circuit, however, has developed a two-part inquiry, including a "horizontal dimension" test and a "vertical dimension" test, for determining whether a transaction is in the ordinary course of business under section 363(c)(1).  *See, e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 791 (Bankr. D. Del. May 24, 2007); *Braunstein v. McCabe*, 571 F. 3d 108, 124-25 (1st Cir. 2009).  The horizontal dimension test focuses on whether, from an industry wide perspective, the transaction is "of the sort commonly undertaken by companies in

that industry." *In re Roth Am., Inc.*, 975 F.2d 202 at 953.  The vertical dimension test (or creditor's expectation test) focuses on the vantage point of a hypothetical creditor and inquires whether the transaction subjects the creditor to economic risks of a nature different from those the creditor accepted when it decided to extend credit to the debtor.  *Id.*

27.     The Debtors believe that the renewal of the Financing Agreements and/or the execution of new premium financing agreements satisfies the "horizontal dimension" test because maintaining insurance coverage and entering into related premium financing agreements is a common industry practice.  *Drabkin*, 800 F.2d at 1154 (finding such a premium financing agreement to be a "common commercial arrangement.").  The "vertical dimension" test is also satisfied because the Debtors' maintenance of insurance under premium financing agreements does not subject the Debtors' creditors to any economic risk, but rather, serves to protect the Debtors' creditors from economic risk.  Accordingly, the renewal of the Financing Agreements and/or the execution of new premium financing agreements constitute "ordinary course" uses of estate property under section 363(c)(1) of the Bankruptcy Code.  *See In re Roth Am.*, 975 F.2d at 952 n.4 (*citing U.S. v. Deutscher*, 115 B.R. 592, 598-99 (M.D. Tenn. 1990), for the proposition that "trustee's use of fund to . . . reinstate insurance was in ordinary course of business").

28.     Indeed, the Debtors submit that it may be outside the ordinary course of business for them to fail to renew the Financing Agreements.  *See In re Lavigne*, 114 F.3d 379, 383-84 (2d Cir. 1994) (cancellation of insurance policy was not in the ordinary course of business).  Nevertheless, out of an abundance of caution, the Debtors seek entry of the proposed interim and final orders approving, under section 363 of the Bankruptcy Code, the Debtors' postpetition renewal of the Financing Agreements and/or the execution of new premium financing agreements.

29.     Courts in this jurisdiction routinely grant similar relief.  *See*, *e.g.*, *In re Taronis Fuels, Inc.*, No. 22-11121 (BLS) (Bankr. D. Del. Dec. 8, 2022) (authorizing debtors on a final basis to continue their current insurance policies, renew or obtain new insurance policies and execute other agreements in connection with such policies, and honor all obligations under premium financing agreements); *In re Am. Eagle Del. Holding Co. LLC*, No. 22-10028 (JKS) (Bankr. D. Del. Feb. 7, 2022) (same); *In re BHCosmetics Holdings*, *LLC*, No. 22-10050 (CSS) (Bankr. D. Del. Feb. 4, 2022) (same); *In re CP Holdings LLC*, No. 21-10950 (LSS) (Bankr. D. Del. Jul. 15, 2021) (same); *In re CMC II, LLC*, No. 21-10461 (JTD) (Bankr. D. Del. Apr. 1, 2021) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 21, 2020) (same).

**III.     The Court Should Authorize, but Not Direct, the Banks to Honor and Process the Debtors' Payments Related to the Insurance Program**

30.     The Debtors also request that the Court authorize the Banks, when requested by the Debtors, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations, if any, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Debtors further request that all Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

**THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

31.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for

which money damages cannot provide adequate compensation. *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g.*, *Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994). The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and, accordingly, should be granted.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

32.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

33.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the interim or final orders is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of any party's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of any party's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by any party that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and all parties' rights to contest the extent, validity, or perfection or seek avoidance of all such liens are hereby reserved. If the Court grants the relief sought herein, any payment made pursuant to

---

the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of any party's rights to subsequently dispute such claim.

## NOTICE

34. The Debtors have provided notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the twenty (20) unsecured claims against the Debtors (on a consolidated basis); (c) the United States Department of Justice; (d) counsel to the DIP Agent; (e) the office of the attorneys general for the states in which the Debtors operate; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the Insurance Carriers; (i) the Brokers; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

35. No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: May 1, 2023          Respectfully submitted,
       Wilmington, Delaware

_/s/ Christopher M. Samis_
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
Sameen Rizvi (No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email:  csamis@potteranderson.com
        kgood@potteranderson.com
        astulman@potteranderson.com
        srizvi@potteranderson.com

-and-

Cullen Drescher Speckhart, Esq.
Michael A. Klein, Esq.
Evan Lazerowitz, Esq.
Paul Springer, Esq.
**COOLEY LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 479-6000
Facsimile:  (212) 479-6275
Email:  cspeckhart@cooley.com
        mklein@cooley.com
        elazerowitz@cooley.com
        pspringer@cooley.com

_Proposed Counsel for the Debtors and Debtors in Possession_

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| DECURTIS HOLDINGS LLC, *et al.*,[1] | Case No. 23-10548 (___) |
| Debtors. | (Joint Administration Requested) |
| | **Re: Docket No. __** |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL OBLIGATIONS ARISING THEREUNDER, (B) RENEW, REVISE, EXTEND, SUPPLEMENT OR ENTER INTO NEW INSURANCE POLICIES, AND (C) CONTINUE THEIR INSURANCE PREMIUM FINANCING PROGRAM; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (i) authorizing, but not directing, the Debtors to (a) maintain their existing insurance policies and pay all obligations arising thereunder or in connection therewith and (b) renew, revise, extend, supplement or enter into new insurance coverage as needed in their business judgment, and (c) continue their insurance premium financing program and renew or enter into new premium financing programs as necessary under substantially similar terms; (ii) authorizing the Banks to honor and process all checks and electronic transfer requests related to the foregoing; (iii) granting related relief; and (iv) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  DeCurtis Holdings LLC (2384) and DeCurtis LLC (9241).  The location of the Debtors' service address in these chapter 11 cases is 3208 East Colonial Drive, Suite C190, Orlando, FL 32803.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

from the United States District Court for the District of Delaware, dated February 29, 2012, and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is GRANTED on an interim basis as set forth herein.

2.     The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be **received** by the following parties, **by no later than 4:00 p.m., prevailing Eastern Time, on _____, 2023:** (i) proposed counsel to the Debtors, Cooley LLP, 1299 Pennsylvania Avenue, NW, Suite 700, Washington, DC 20004 (Attn: Cullen D. Speckhart (cspeckhart@cooley.com), and Cooley LLP, 55 Hudson Yards, New York, NY 1000 (Attn: Michael A. Klein (mklein@cooley.com), Evan Lazerowitz (elazerowitz@cooley.com), and Paul J. Springer (pspringer@cooley.com)); (ii) proposed co-counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Christopher M. Samis (csamis@potteranderson.com), L.

Katherine     Good     (kgood@potteranderson.com),     and     Aaron     H.     Stulman
(astulman@potteranderson.com)); (iii) Office of the United States Trustee, J. Caleb Boggs Federal
Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Jane M.
Leamy (Jane.M.Leamy@usdoj.gov)); (iv) counsel to the DIP Agent, (a) Proskauer Rose LLP,
Eleven Times Square, New York, NY 10036 (Attn: David M. Hillman (dhillman@proskauer.com),
Vincent     Indelicato     (vindelicato@proskauer.com),     and     Scott     P.     Thurman
(sthurman@proskauer.com)), (b) Proskauer Rose LLP, 70 West Madison, Suite 3800, Chicago IL
60601     (Attn:     Jordan     Sazant     (jsazant@proskauer.com)     and     Ashley     Weringa
(aweringa@proskauer.com)), and (c) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800,
Wilmington, DE 19801 (Attn: Adam G. Landis (landis@lrclaw.com) and Matthew B. McGuire
(mcguire@lrclaw.com)); and (v) if any statutory committee has been appointed in the Chapter 11
Cases, counsel to such committee.

3.      The Debtors are authorized, but not directed, to (i) continue to maintain and perform
under their Insurance Program, and (ii) revise, extend, renew, supplement, or change the Policies
or enter into new policies (including through obtaining "tail" coverage), if necessary, in the
ordinary course of business consistent with the Debtors' past practice.

4.      The Debtors are authorized, but not directed, (i) to continue honoring, in the
ordinary course of business consistent with the Debtors' past practice, the Financing Agreements
and to renew or enter into new financing agreements as the terms of the existing arrangement
expires, without further order of this Court, and (ii) to pay their regular installment payments under
the Financing Agreements as the same become due in the ordinary course of business consistent
with the Debtors' past practice.

3

5.      Subject to entry of a final order, and notwithstanding anything to the contrary in the Financing Agreements, in the event the Debtors default under the terms of the Financing Agreements, the PFA Lenders shall not cancel any insurance policy of the Debtors without first providing notice of such default in writing by overnight mail to the Debtors and their bankruptcy counsel, and at least five (5) business days to cure. If the Debtors fail to cure the default within that time, then the PFA Lenders may, in accordance with the terms of the Financing Agreements, and without further order of this Court, exercise any and all of its rights under the Financing Agreements.

6.      Notwithstanding anything to the contrary in the Financing Agreements, the Debtors' filing of these Chapter 11 Cases shall not constitute a default under the Financing Agreements.

7.      Absent further order of this Court upon notice, during the course of these Chapter 11 Cases, the Debtors shall not renew or enter into any new premium financing agreements upon any terms less favorable than those in the exiting Financing Agreements.

8.      The Debtors are authorized, but not directed, in their discretion, to pay, honor, or otherwise satisfy premiums, claims, deductibles, administrative fees, Brokers' Fees, and any other prepetition or postpetition obligations on account of the Insurance Program, to the extent that the Debtors determine that such actions are in the best interests of their estates.

9.      All Banks are authorized, but not directed, when requested by the Debtors, in the Debtors' discretion, to process and honor all checks and fund transfer requests for prepetition obligations related to the Insurance Program that the Debtors are authorized to pay pursuant to this Order, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date, provided, that funds are available in the Debtors' accounts to

cover the checks and fund transfers.  The Banks are authorized, but not directed, to rely on the Debtors' designation of any particular check or fund transfer request to be honored, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Order.  The Debtors are authorized to issue new postpetition checks to replace any checks, drafts and other forms of payment, or effect new postpetition electronic transfers, which may be inadvertently dishonored or rejected, and to reimburse any expenses that may be incurred as a result of any bank's failure to honor a prepetition check.

10.    Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Final Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights any party in interest may have to subsequently dispute any obligation on any ground that applicable law permits.

11.    Nothing in this Final Order or the Motion shall be deemed to constitute assumption or adoption of any agreement under section 365 of the Bankruptcy Code.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

12.    Notwithstanding the relief granted in this Interim Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the Court's *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral on a Limited Basis, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, and any amended or final order entered by the Court in connection therewith (collectively, the "DIP Orders") and the Approved Budget (as defined in the DIP Orders). To the extent there is

any inconsistency between the terms of such DIP Orders and any action taken or proposed to be taken hereunder, the terms of such DIP Orders and the Approved Budget shall control.

13.     The notice requirement of Bankruptcy Rule 6004(a) is waived.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

16.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## SCHEDULE 1

**Insurance Policies**

| Schedule of Insurance Policies | | | |
|---|---|---|---|
| **Type of Policy Coverage** | **Insurance Carrier(s)** | **Policy Number** | **Policy Term** |
| Excess Liability | Admiral Insurance Company | GX000004591-02 | 07/24/2022 – 07/24/2023 |
| General Liability and Product Liability | Admiral Insurance Company | CA000042677-01 | 07/24/2022 – 07/24/2023 |
| Commercial Property/Product Liability | Covington Specialty Insurance Company | VBA872411 00 | 07/24/2022– 07/24/2023 |
| Marine General Liability/Maritime Employer Liability (MEL) | Ascot Insurance Company | MAPL2310001149-04 | 03/1/2023– 03/1/2024 |
| Marine Open Cargo Policy | Ascot Marine | MACA2310002816-02 | 2/28/2023 - 2/28/2024 |
| ERISA Fidelity Bond | Travelers Casualty and Surety Company of America | 107038554 | 02/15/2023 – 02/22/2025 |
| D&O/EPL/FID/Crime Policy | Star Surplus Lines Insurance Company | 1000623976221 | 05/15/2022 – 05/15/2023 |
| Runoff D&O Policy | Everest National Insurance Company | PCIP000162-191 | 05/15/2019 – 05/15/2025 |
| Excess D&O Policy | Crum & Foster Specialty Insurance Co. | EPP-102416 | 05/15/2022 – 05/15/2023 |
| Side A D&O Policy | AXIS Insurance Company | P-001-000351588-03 | 05/15/2022 – 05/15/2023 |
| Marine -Staff MLC Coverage (Medical/Personal Accident/Life) | Crewsure Marine | CSCIXDZ1359514 | 4/1/2023 - 3/31/2024 |

## **EXHIBIT B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| DECURTIS HOLDINGS LLC, *et al.*,[1] | ) Case No. 23-10548 (___) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) |
|  | ) **Re: Docket No. __** |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) MAINTAIN EXISTING
INSURANCE POLICIES AND PAY ALL OBLIGATIONS ARISING
THEREUNDER, (B) RENEW, REVISE, EXTEND, SUPPLEMENT OR ENTER
INTO NEW INSURANCE POLICIES, AND (C) CONTINUE THEIR
INSURANCE PREMIUM FINANCING PROGRAM; AND (II) GRANTING
RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of a final order (this "<u>Final Order</u>") (i) authorizing, but not directing, the Debtors to (a) maintain their existing insurance policies and pay all obligations arising thereunder or in connection therewith and (b) renew, revise, extend, supplement or enter into new insurance coverage as needed in their business judgment, and (c) continue their insurance premium financing program and renew or enter into new premium financing programs as necessary under substantially similar terms; (ii) authorizing the Banks to honor and process all checks and electronic transfer requests related to the foregoing; (iii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  DeCurtis Holdings LLC (2384) and DeCurtis LLC (9241).  The location of the Debtors' service address in these chapter 11 cases is 3208 East Colonial Drive, Suite C190, Orlando, FL 32803.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

February 29, 2012, and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis to the extent set forth herein.

2.      Any objections to the Motion not resolved or otherwise withdrawn are OVERRULED.

3.      The Debtors are authorized, but not directed, in their discretion, to pay, honor, or otherwise satisfy premiums, claims, deductibles, administrative fees, Brokers' Fees, and any other prepetition or postpetition obligations on account of the Insurance Program, to the extent that the Debtors determine that such actions are in the best interests of their estates.

4.      Without further order of this Court, the Debtors are authorized, but not directed, to renew, revise, extend, supplement, or enter into new insurance coverage as needed in their reasonable business judgment (including through obtaining "tail" coverage).

5.      The Debtors are authorized, but not directed, (i) to continue honoring, in the ordinary course of business consistent with the Debtors' past practice, the Financing Agreements and to renew or enter into new financing agreements as the terms of the existing arrangement expires, without further order of this Court, and (ii) to pay their regular installment payments under the Financing Agreements as the same become due in the ordinary course of business consistent with the Debtors' past practice.

6.      Notwithstanding anything to the contrary in the Financing Agreements, the Debtors' filing of these Chapter 11 Cases shall not constitute a default under the Financing Agreements.

7.      Absent further order of this Court upon notice, during the course of these Chapter 11 Cases, the Debtors shall not renew or enter into any new premium financing agreements upon any terms less favorable than those in the exiting Financing Agreements.

8.      All banks are (a) authorized to receive, process, honor and pay any and all checks, drafts, electronic transfers and other forms of payment used by the Debtors to satisfy their Insurance Obligations, whether presented before, on or after the Petition Date; _provided_ that sufficient funds are on deposit in the applicable accounts to cover such payments and that the total amount of Insurance Obligations does not exceed the amount authorized to be paid pursuant to this Final Order, and (b) prohibited from placing any holds on, or attempting to reverse, any automatic transfers on account of Insurance Obligations.  The Debtors are authorized to issue new postpetition checks to replace any checks, drafts and other forms of payment, or effect new postpetition electronic transfers, which may be inadvertently dishonored or rejected, and to reimburse any expenses that may be incurred as a result of any bank's failure to honor a prepetition check.

9.      Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Final Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights any party in interest may have to subsequently dispute any obligation on any ground that applicable law permits.

10.      Nothing in this Final Order or the Motion shall be deemed to constitute assumption or adoption of any agreement under section 365 of the Bankruptcy Code.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

11.      Notwithstanding the relief granted in this Final Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the Court's *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral on a Limited Basis, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, and any amended or final order entered by the Court in connection therewith (collectively, the "DIP Orders") and the Approved Budget (as defined in the DIP Orders). To the extent there is any inconsistency between the terms of such DIP Orders and any action taken or proposed to be taken hereunder, the terms of such DIP Orders and the Approved Budget shall control.

12.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

13.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

14.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## **SCHEDULE 1**

**Insurance Policies**

| Schedule of Insurance Policies | | | |
|---|---|---|---|
| **Type of Policy Coverage** | **Insurance Carrier(s)** | **Policy Number** | **Policy Term** |
| Excess Liability | Admiral Insurance Company | GX000004591-02 | 07/24/2022 – 07/24/2023 |
| General Liability and Product Liability | Admiral Insurance Company | CA000042677-01 | 07/24/2022 – 07/24/2023 |
| Commercial Property/Product Liability | Covington Specialty Insurance Company | VBA872411 00 | 07/24/2022– 07/24/2023 |
| Marine General Liability/Maritime Employer Liability (MEL) | Ascot Insurance Company | MAPL2310001149-04 | 03/1/2023– 03/1/2024 |
| Marine Open Cargo Policy | Ascot Marine | MACA2310002816-02 | 2/28/2023 - 2/28/2024 |
| ERISA Fidelity Bond | Travelers Casualty and Surety Company of America | 107038554 | 02/15/2023 – 02/22/2025 |
| D&O/EPL/FID/Crime Policy | Star Surplus Lines Insurance Company | 1000623976221 | 05/15/2022 – 05/15/2023 |
| Runoff D&O Policy | Everest National Insurance Company | PCIP000162-191 | 05/15/2019 – 05/15/2025 |
| Excess D&O Policy | Crum & Foster Specialty Insurance Co. | EPP-102416 | 05/15/2022 – 05/15/2023 |
| Side A D&O Policy | AXIS Insurance Company | P-001-000351588-03 | 05/15/2022 – 05/15/2023 |
| Marine -Staff MLC Coverage (Medical/Personal Accident/Life) | Crewsure Marine | CSCIXDZ1359514 | 4/1/2023 - 3/31/2024 |