## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| DECURTIS HOLDINGS LLC, *et al.*,[1] | ) Case No. 23-10548 (JKS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## JOINT PRETRIAL ORDER

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure, incorporated by Rule 7016 and, if applicable, Rule 9014(c) of the Federal Rules of Bankruptcy Procedure.

### I.    Identity of the Parties

A.    <u>Movant:</u>  Carnival Corporation ("<u>Carnival</u>")

Movant's Counsel:

> Domenic E. Pacitti (DE Bar No. 3989)
> Richard M. Beck (DE Bar No. 3370)
> Sally E. Veghte (DE Bar No. 4762)
> **KLEHR HARRISON HARVEY BRANZBURG LLP**
> 919 Market Street, Suite 1000
> Wilmington, DE 19801-3062
> Tel: (302) 426-1189
> Email: rbeck@klehr.com
>         dpacitti@klehr.com
>         sveghte@klehr.com

> Raniero D'Aversa, Esq.
> Michael Trentin, Esq.
> **ORRICK, HERRINGTON & SUTCLIFFE LLP**
> 51 West 52nd Street
> New York, NY 10019-6142
> Tel: (212) 506-5000
> Email: rdaversa@orrick.com

---

[1]    The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number include: DeCurtis Holdings LLC (2384) and DeCurtis LLC (9241). The location of the Debtors' service address in these chapter 7 cases is 3208 East Colonial Drive, Suite C190, Orlando, FL 32803.

mtrentin@orrick.com

Sheryl K. Garko, Esq.
Laura B. Najemy, Esq.
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
222 Berkeley Street, Suite 2000
Boston, MA 02116
Tel: (617) 880-1800
Email: sgarko@orrick.com
　　　 lnajemy@orrick.com

Steven J. Routh, Esq.
T. Vann Pearce, Jr., Esq.
Diana S. Fassbender, Esq.
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1152 15th Street NW
Washington, N.C. 20005
Tel: (202) 339-8400
Email: srouth@orrick.com
　　　 vpearce@orrick.com
　　　 dszego@orrick.com

Rob Uriarte, Esq.
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90071
Tel: (213) 629-2020
Email: ruriarte@orrick.com

B.　Opposing Parties: Invictus Global Management, LLC ("Invictus"), Amit Patel,
and Cindy Chen Delano (together, the "Invictus Parties").

Opposing Parties' counsel:

Eric J. Monzo
Tara C. Pakrouh
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: emonzo@morrisjames.com
　　　 tpakrouh@morrisjames.com

-and-

Andrew K. Glenn

2

Richard C. Ramirez
Margaret J. Lovric
**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
Email: aglenn@glennagre.com
rramirez@glennagre.com
mlovric@glennagre.com

*Counsel for Invictus Global Management LLC, Cindy Chen Delano and Amit Patel*

**PROSKAUER ROSE LLP**
David M. Hillman (admitted pro hac vice)
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: dhillman@proskauer.com

- and –

**PROSKAUER ROSE LLP**
Steven O. Weise
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
Email: sweise@proskauer.com

*Counsel for Invictus Global Management LLC as DIP Agent*

C.    Respondents: UnumX (and together with Carnival and Invictus, the "Parties")

Aaron Applebaum, Esq.
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Email: Aaron.Applebaum@us.dlapiper.com

-and-

Noah Schottenstein, Esq.
1900 N. Pearl Street, Suite 2200

3

Dallas, TX 75201
Email: noah.schottenstein@us.dlapiper.com

-and-

David Primack, Esq.
**McElroy, Deutsch, Mulvaney & Carpenter LLP**
300 Delaware Avenue, Suite 770
Wilmington, DE 19801
Email: dprimack@mdmc-law.com

**Nature of the Case**

*Carnival's Statement:* This trial concerns two motions: (1) *Carnival Corporation's Motion for 11 U.S.C. § 105 Relief from Unlawful Strict Foreclosure and for a Finding of Contempt and Sanctions Under Fed. R. Bankr. P. 9014 and 9020* [ECF No. 635] ("Enforcement Motion") and (2) *Motion of Carnival Corporation for Access to Carnival-Licenses MAS Software Code Pursuant to 11 U.S.C. § 365(n)* [ECF No. 514], which supplements Carnival's initial 365(n) motion filed on June 19, 2023 [ECF No. 256] (the "365(n) Motion").

After three months of litigation and a 3-day bench trial, this Court entered a written opinion on August 9, 2023 (the "Ownership Opinion") [ECF No. 459], which found that the Remaining DXP Assets in Debtors' possession were comprised of or derived from Carnival Information and that Carnival therefore has an ownership interest in those assets. As a result, the Ownership Opinion further ruled that Carnival is entitled to injunctive relief against the sale, use, or disclosure of the Remaining DXP Assets. The Ownership Opinion itself prohibited the sale or disclosure of the Remaining DXP Assets pending entry of a permanent injunction. On August 25, 2023, the Court entered a permanent injunction (the "Permanent Injunction") that effectuated the findings in the Ownership Opinion, including its prohibition on the sale or disclosure of the Remaining DXP Assets by Debtors or anyone else acting in concert with them.

The evening before entry of the Permanent Injunction, on August 24, 2023, the IGM Parties in concert with the Debtors facilitated a "strict foreclosure" of the Debtors' property, whereby the Debtors transferred substantially all assets in Debtors' possession, including the Remaining DXP Assets, to UnumX, a Cayman Islands' entity newly created, substantially owned, and completely controlled by Invictus.  Before commencing the strict foreclosure, Invictus during status conferences misled Carnival and the Court about their intentions to exercise remedies in order to dissuade Carnival and the Court from taking action before the remedies notice period expired under the Final DIP Order and to ensure that the foreclosure would occur before entry of the Permanent Injunction.   Nonetheless, as a result of the strict foreclosure, UnumX obtained control over the entirety of the Remaining DXP Assets, including the Carnival Information which comprise and/or from which those assets were derived, e.g., Carnival's location engine, prototype applications, technical documentation and confidential communications spanning years of confidential development work.  At the same time, the IGM Parties denied Carnival access to any portion of those assets.  Not only was access and control of the entire DXP system transferred to UnumX, but Carnival has since learned that following the strict foreclosure the DXP code has since been copied and moved to other repositories in violation of the Permanent Injunction.[2]

The actions of the IGM Parties and UnumX (together, the "Respondents") violated the Bankruptcy Code, the Uniform Commercial Code, and this Court's orders.   Pursuant to the Enforcement Motion, Carnival seeks to unwind the strict foreclosure so that control over the

---

[2] Pursuant to a stipulation between the parties and approved by the Court, on October 4, 2023, UnumX (no longer controlled by Invictus, as of September 29, 2023) provided Carnival with *temporary limited access* to the DXP and MAS.  *See* ECF No. 681.  That temporary access allowed Carnival to observe that the Remaining DXP Assets were improperly moved, copied, and used during the period following the August 24 strict foreclosure and before Invictus was divested of control of UnumX – i.e., violations of the Permanent Injunction occurred during the period when UnumX was under Invictus' control.

DXP is transferred back into the estates where the chapter 7 trustee can facilitate the DXP's orderly disposition with this Court's oversight.  Carnival also seeks a sanctions award in the form of attorneys' fees based on Respondents' willful violations of the automatic stay, the Ownership Opinion, and the Permanent Injunction.  Finally, Carnival seeks coercive sanctions in the form of a daily fine on Respondents to be paid into the Court until they return to compliance with the Court's orders.

Pursuant to its 365(n) Motion, Carnival is seeking to enforce its rights as an intellectual property licensee under section 365(n) of the Bankruptcy Code.  Prepetition the Debtors granted Carnival a perpetual license use of MAS, which Carnival Cruise Lines uses on its ships as part of their mustering safety system.  Carnival initially invoked its section 365(n) rights by emergency motion filed in June 2023 after the Debtors abruptly cut off Carnival's access to MAS over Father's Day weekend.  Carnival supplemented its request for section 365(n) relief on August 23, 2023 before the strict foreclosure was implemented and while Debtors' motion to convert the chapter 11 cases were pending.  Through its 365(n) Motion, Carnival seeks an order requiring UnumX to provide Carnival with a copy of the MAS source code so that Carnival can continue to exercise its perpetual MAS license.  After Invictus was removed as manager of its fund, Carnival and the new fund manager reached a temporary agreement regarding Carnival's use of the MAS software.  *See* ECF No. 686.  That agreement has expired, thus necessitating that Carnival prosecute the 365(n) Motion at this time.

### *Invictus Parties' Statement:*[3]

---

[3]   In this section, capitalized terms used and undefined herein have the meaning set forth in the *DIP Agent's and Unumx's Objection to Carnival Corporation's Motion for 11 U.S.C. § 105 Relief from Unlawful Strict Foreclosure and for a Finding of Contempt and Sanctions under Fed. R. Bankr. P. 9014 and 9020* [Docket No. 659].

10799158.v6

Carnival contends that the Invictus Parties violated the Ownership Opinion and Permanent Injunction by selling, using or disclosing the Remaining DXP Assets.   The allegation is false.

First, there was no sale of the Remaining DXP Assets.  The Debtors did **not** sell, the DIP Agent did **not** foreclose on, and UnumX did **not** acquire the Remaining DXP Assets, or Carnival's interest on those assets as determined by this Court in its Ownership Opinion.  Rather, as the foreclosure agreement explicitly provides, the Debtors sold and UnumX acquired only the ***Debtors' interest*** in the Remaining DXP Assets and other DIP Collateral.  The foreclosure agreement is equally explicit that UnumX did **not** acquire "any interest of Carnival as set forth in the Bankruptcy Court's Ownership Opinion."    Carnival's theory of "sale" is predicated on possession and control.  UnumX's control and access to the GitHub Enterprise server is not ownership of the ***source code*** that resides on the server.  The Court determined that the Debtors owned the GitHub Enterprise server, and that Carnival has an ownership interest in its contents with respect to the Remaining DXP source code.  *See* Ownership Opinion at 9-10 ("DeCurtis-owned GitHub Enterprise server") and 26-42.  As Carnival argued, and the Court ultimately found, ownership of and control over the GitHub Enterprise server is not the same as ownership of its source code contents.  In fact, because Carnival previously argued that possession of the code did not entail ownership – and prevailed – it is law of the case.  Carnival is judicially estopped from taking the opposite position now.

Moreover, the use and disclosure of the Remaining DXP Assets was authorized.  Carnival relies on the same flawed theory of possession and control over the GitHub Enterprise server to argue that UnumX's GitHub Enterprise server access constitutes a prohibited disclosure of the Remaining DXP Assets.  Again, Carnival is wrong.  As set forth in the Saxena Decl. at ¶¶ 19-25, 30-35, any use and disclosures of the Remaining DXP Assets was permitted by paragraph 2 of the

Permanent Injunction.  Moreover, reasonable and prudent precautions were implemented to ensure compliance with the Permanent Injunction: every UnumX employee was required to execute an employment agreement acknowledging that (a) UnumX had implemented a protective protocol to comply with the Permanent Injunction and (b) they would comply with the protective protocol. UnumX further appointed UnumX's Chief Technology Officer as the designated employee to ensure compliance with the Permanent Injunction.

Carnival also argues that the PSFA was unauthorized by the Final DIP Order and Delaware law.  Again, Carnival is wrong.   The PSFA was a valid exercise of remedies under the Final DIP Order and the Delaware UCC.  Every step of the way, the DIP Agent relied on, and acted in accordance with and pursuant to, the Final DIP Order and Court-approved DIP Credit Agreement. Carnival, represented by sophisticated counsel, negotiated key terms of the Final DIP Order (including the right be a notice party under Paragraph 34) and failed to seek to reimpose the automatic stay or seek to enjoin the lawful exercise of remedies before the expiration of the Remedies Notice Period.  The suggestion that Carnival was "misled" is just an excuse for its own failure to act in a timely manner to try to frustrate the lawful exercise of post-default remedies.

At all times, the Invictus Parties acted with full transparency and candor in a situation that was complex and fluid.  The Ownership Opinion caused significant instability, turmoil, and angst among the Debtors' employees.   Those risks only worsened with the Debtors' filing of the conversion motion.   While the Invictus Parties determined that that there was a viable business plan to pursue around the highly skilled employee base in the U.S. and India and certain non-DXP Assets, it had to address the need for additional operating capital to support the business (including payroll, third party vendors, and software subscriptions), a material risk of key employee resignations, and the unsustainable professional fee burn.  In light of those factors (and others), the

Invictus Parties determined that speed was key to avoid the meltdown of the DIP Collateral and a complete loss on Invictus' investment and a total collapse of the Debtors' business.

The PSFA was executed on August 24 – the day before the Court's entry of the Permanent Injunction – for at least four reasons: (i) the Remedies Notice Period expired three days earlier and there was no reason to delay execution, (ii) the PSFA was structured to comply with the Ownership Opinion as set forth above, (iii) Carnival sought to interfere with the DIP Agent's planned foreclosure despite the fact Carnival failed to seek to reimpose the automatic stay or seek injunctive relief during the Remedies Notice Period as set forth in the Final DIP Order, and (iv) the DIP Agent and UnumX (as its transferee) always recognized that they would be bound by the Court's Permanent Injunction as contemplated in the Ownership Opinion.

The Remedies Challenge Motion seeking a finding of contempt against the Invictus Parties is entirely baseless and should be denied. The 365(n) Motion is a dispute solely between Carnival and UnumX and the Invictus Parties take no position on that dispute.

*UnumX's Statement:* UnumX was newly formed in connection with implementation of the PSFA. Prior to and until completion of the foreclosure contemplated by the PSFA, UnumX had no assets, operations or employees. Instead, UnumX purportedly had only two board members, Cindy Chen Delano and Amit Patel, the principals of Invictus Global Management, LLC ("IGM"). As such, UnumX had no control over, or role in, any acts prior to and through the completion of the foreclosure.

Invictus was the contractually appointed investment manager of Invictus Special Situations Master I, L.P. (the "Master Fund"). Invictus Special Situations I GP, LLC ("Invictus GP"), also owned by Cindy Chen Delano and Amit Patel, was the general partner of the Master Fund. As investment manager and general partner, IGM and Invictus GP caused the Master Fund to loan

9

money to DeCurtis prior to these bankruptcy cases, and then again post-petition, through a DIP Loan under which IGM and Invictus GP caused the Master Fund to agree to IGM's appointment as DIP Agent.  IGM directed the creation of UnumX as a new legal entity in contemplation of the PSFA, as the designated entity that would receive the foreclosed-upon DIP Collateral.  UnumX understands that IGM intended to structure the ownership of UnumX so that UnumX would be owed 92.3% by the Master Fund, and 8.7% by the Groombridge Wu ("Groombridge") law firm, in furtherance of IGM's original agreement with Groombridge, as reflected in Groombridge's retention application filed with this Court, that Groombridge would receive an equity position in a "Reorganized DeCurtis" following a successful chapter 11 plan or sale.  While both IGM and Groombridge appear to believe that an equity position in UnumX was effectively conveyed to Groombridge, confirming transactional documents have not been provided.

Prior to September 29, 2023, all actions taken by the Master Fund were implemented under the direction and control of IGM and Invictus GP.  Through September 29, 2023, corporate governance of UnumX was controlled by Cindy Chen Delano and Amit Patel as its directors, and by Amit Patel as purported Chief Restructuring Officer.  Following implementation of the foreclosure, UnumX, initially acting through its directors, hired many former DeCurtis employees, certain of which were appointed as officers of UnumX or its operating subsidiaries, though effective control remained with Cindy Chen Delano and Amit Patel as directors.

On September 29, 2023, a supermajority of the limited partners of the Master Fund removed Invictus GP as the Master Fund's general partner and terminated the management agreement with IGM.  In connection therewith, Cindy Chen Delano and Amit Patel resigned as board members of UnumX, and IGM resigned as DIP Agent.  TREO Asset Management LLC and TREO Vitus GP LLP (collectively, "TREO") were appointed as replacement investment manager and general

10

partner of the Master Fund, respectively, and James Ward, who is unaffiliated with TREO or the other parties in this action, was appointed as an independent director of UnumX.

Since TREO's appointment, TREO has sought to work cooperatively with Carnival to ensure that UnumX complies with all court orders and injunctions, and to mitigate any damages that Carnival asserts it has suffered as a result of the foreclosure. In connection therewith, under a stipulation previously approved by this Court, TREO promptly provided Carnival with a working copy of the CCL MAS source code and gave Carnival access to the GitHub server so that Carnival could inspect the DXP source code. While Carnival's rights to the CCL MAS source code under that stipulation were time-limited, as a further sign of good faith, TREO and UnumX have not exercised their rights under the stipulation to require that Carnival return the CCL MAS code, even though a broader settlement has not yet been achieved.

UnumX takes no position as to whether the foreclosure or other actions prior to September 29, 2023, violate any orders or injunctions issued by this Court, or as to the positions of the parties generally with respect to the relief sought by Carnival in connection with such actions. UnumX asserts that, since TREO's appointment on September 29, 2023, UnumX has worked with Carnival in good faith and has not taken any actions that were violative of any orders or injunctions of this Court. The Master Fund and UnumX are currently engaged in separate litigation with IGM, Invictus GP, Cindy Chen Delano and Amit Patel in the Delaware Court of Chancery, for which certain claims are scheduled for trial commencing on January 11, 2024. UnumX reserves all rights in connection therewith.

## II.    Jurisdiction

A.    Subject Matter Jurisdiction: The Court has  jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 1334(b). Pursuant to 28 U.S.C. §§ 157(a) and 157(b)(1),

this Court may exercise subject matter jurisdiction over these contested matters.  In addition,

the Court has authority to enforce its Final DIP Order, the Permanent Injunction and

Ownership Opinion, which were brought as core proceedings pursuant to 28 U.S.C. §

1334(b).

      B.      <u>Personal Jurisdiction:</u> Personal jurisdiction is not contested.

**III.      Statement of Uncontested Facts**

      A.      The following facts are undisputed and have been agreed to and stipulated by the Parties:

1.      On May 1, 2023, the Debtors filed a motion seeking approval of DIP financing. *See* Docket No. 15.

2.      The Court entered the Final DIP Order on June 23, 2023.  *See* Docket No. 285.

3.      The Court entered its Ownership Opinion on August 9, 2023.

4.      The Invictus Parties had actual knowledge of the Ownership Opinion before executing the Partial Strict Foreclosure Agreement (the "<u>PSFA</u>" and the related foreclosure pursuant thereto, the "<u>Partial Strict Foreclosure</u>"), dated August 24, 2023.  *See* Docket No. 530.

5.      UnumX obtained actual knowledge of the Ownership Opinion when UnumX was created.

6.      On August 24, 2023, Carnival filed a *Notice of Proposed Permanent Injunction*. *See* Adv Proc. Docket No. 80.

7.      On August 24, 2023, the Debtors filed a *Notice of Filing Debtors' Proposed Order Related to the Opinion Regarding Ownership of the DXP Assets and Carnival's Request for Declaratory And Injunctive Relief.  See* Adv Proc. Docket No. 81.

8.      The PSFA was executed on the evening of August 24, 2023.  *See* Docket No. 530.

9.     The Debtors are signatories to the PSFA.

10.     The Court entered the Permanent Injunction on August 25, 2023.  *See* Docket No. 534.

11.     The Court entered the Order Regarding Ownership Issue on August 25, 2023.

12.     On June 23, 2023, Carnival filed a *Complaint for Declaratory and Injunctive Relief* against Defendant Debtors DeCurtis Holdings LLC and DeCurtis LLC f/k/a DeCurtis Corporation in an adversary proceeding.  *See Carnival Corporation v. DeCurtis Holdings LLC and DeCurtis LLC*, Case No. 23-50413 (the "Carnival Adversary Proceeding").  Carnival did not assert a claim for turnover in the Carnival Adversary Proceeding.

13.     On August 28, 2023, Carnival filed the *Response and Objection to Second Notice of Exercise of Remedies by DIP Agent Pursuant to Final DIP Order* [Docket No. 540].

14.     All Parties in this contested matter had actual knowledge of the Permanent Injunction.

15.     UnumX, despite being organized under foreign law, never contested the Court's jurisdiction over it in these Chapter 11 Cases or whether the Permanent Injunction applied to its actions.

16.     At the time of the PSFA, the Debtors had disputed whether Section 365(n) gave Carnival the right to MAS source code and the Court had not ruled on that issue.

IV.     **Statement of Disputed Facts**

A.     The following facts are disputed:

1.     Whether the Partial Strict Foreclosure constituted a "sale" of the Remaining DXP Assets to UnumX.

10799158.v6

2.      Whether UnumX's use or disclosure of the Remaining DXP complied with and was permissible under paragraph 2 of the Permanent Injunction.

3.      Whether one or more Respondents violated paragraphs 1(a) through 1(e) of the Permanent Injunction.

4.      Whether the Final DIP Order authorized Invictus and the Debtors to effectuate the Partial Strict Foreclosure without Court approval.

5.      Whether the Partial Strict Foreclosure violated the Ownership Opinion and Permanent Injunction.

6.      Whether Invictus misled Carnival and the Court regarding its intentions to exercise remedies under the Final DIP Order.

7.      Whether the MAS License entitles Carnival to the MAS source code.

8.      Whether transferring possession or control of the GitHub Enterprise server housing the DXP Assets means there was a transfer of ownership of those assets.

9.      Whether Carnival qualifies as a statutory notice party under Delaware law.

10.    The Invictus Parties contend that a relevant disputed fact is whether the "Transferred Collateral" as defined under the PSFA included the Debtors' interest in the "Remaining DXP Assets" as such term is defined in the Ownership Opinion.

11.    The Invictus Parties contend that a relevant disputed fact is whether Carnival has no interest in the Debtors' interest in the "Transferred Collateral," as defined in the PSFA.

12.    The Invictus Parties contend that a relevant disputed fact is whether the Debtors approved and agreed to the Partial Strict Foreclosure.

13.    The Invictus Parties contend that a relevant disputed fact is whether, in the Ownership Opinion, the Court held that the Debtors owned the GitHub Enterprise server account.

14.    The Invictus Parties contend that a relevant disputed fact is whether, in the Ownership Opinion, the Court held that ownership of the GitHub Enterprise server does not entail ownership of its contents.

15.    The Invictus Parties contend that a relevant disputed fact is whether MAS, Icebreaker, AwareCare, and Shield are not Remaining DXP Assets, and the Court has not determined that Carnival has an interest in any of MAS, Icebreaker, AwareCare and Shield.

16.    The Invictus Parties contend that a relevant disputed fact is whether UnumX has possession of access and control over MAS.

17.    The Invictus Parties contend that a relevant disputed fact is whether, prior to the PSFA, Carnival never sought relief from the Court to exercise control over, or possession of, the Remaining DXP Assets.

18.    The Invictus Parties contend that a relevant disputed fact is whether, prior to the PSFA, Carnival never asserted it has the right to exclusive possession of Carnival Information.

19.    The Invictus Parties contend that a relevant disputed fact is whether the Debtors' MAS license to Carnival is non-exclusive.

20.    The Invictus Parties contend that a relevant disputed fact is whether the Debtors' MAS non-exclusive license to Carnival gives it only a contractual claim against the Debtors and the non-exclusive license is not a transfer by the licensor of any property interest in the property licensed to the licensee.

21.    The Invictus Parties contend that a relevant disputed fact is whether the Court has never determined that Carnival has an interest in the Debtors' assets other than the Remaining DXP Assets.

22.     The Invictus Parties contend that a relevant disputed fact is whether the DIP Agent did not foreclosure on Carnival's interest in the Remaining DXP Assets.

## V.    Statement of Relief Sought or Damages Claimed

### *Carnival seeks:*

1.     An order declaring that the strict foreclosure is void and requiring UnumX to return the assets back to the bankruptcy estates in the care and control of the chapter 7 trustee;

2.     Sanctions against all Respondents (jointly and severally) in the form of reimbursement of the attorneys' fees incurred by Carnival in connection with this matter; and

3.     Coercive sanctions against Respondents in the form of a daily fine to be paid into the Court until they return the assets to the estates and the chapter 7 trustee.

### *Invictus seeks:*

1.     An order denying Carnival's Remedies Challenge Motion.

## VI.    Legal Issues

A.     Carnival states that the issues to be decided by the Court and the burdens of proof on each issue are as follows:

1.     Whether the strict foreclosure violated sections 362 and 363 of the Bankruptcy Code.  Respondents have the burden of proof to show their foreclosure was lawful.

2.     Whether the strict foreclosure violated the Uniform Commercial Code. Respondents have the burden of proof to show their foreclosure was lawful.

3.     Whether the strict foreclosure violated the Ownership Opinion or Permanent Injunction.  Carnival has the burden of proof.

10799158.v6

4.      If Respondents violated a court order (including the Ownership Opinion or Permanent Injunction), whether they did so knowingly such that sanctions are appropriate. Carnival has the burden of proof.

5.      If Respondents violated the automatic stay, whether they did so knowingly such that sanctions are appropriate. Carnival has the burden of proof.

6.      Whether section 365(n) of the Bankruptcy Code entitles Carnival to access to the MAS source code.  No applicable burden of proof.

B.      The Invictus Parties state that the issues to be decided by the Court and the burdens of proof on each issue are as follows:

1.      Whether Carnival has standing to avoid the PSFA under the Bankruptcy Code. Carnival bears the burden of proof.

2.      Whether Carnival has standing to avoid the PSFA under Delaware law. Carnival bears the burden of proof.

3.      Whether the PSFA was valid under the Final DIP Order.  Carnival bears the burden of proof.

4.      Whether the PSFA was valid under the Bankruptcy Code.  Carnival bears the burden of proof.

5.      Whether the PSFA was valid under Delaware law.  Carnival bears the burden of proof.

6.      Whether the PSFA violated the Ownership Opinion or Permanent Injunction. Carnival bears the burden of proof.

7.      If UnumX violated the Permanent Injunction, whether sanctions are appropriate against the Invictus Parties. Carnival bears the burden of proof.

8.    If the Invictus Parties violated the automatic stay, whether they did so knowingly such that sanctions are appropriate. Carnival bears the burden of proof.

9.    Whether Section 365(n) of the Bankruptcy Code entitles Carnival to access to the MAS source code.  No applicable burden of proof.

10.    Whether Carnival is judicially estopped from arguing that possession and control of the GitHub Enterprise server account is ownership of its contents. No applicable burden of proof.

## VII.    Witnesses

A.    <u>Carnival's Witnesses:</u> Carnival expects to call the following witnesses:

i.    Expert witness:

**Erik de la Iglesia:** Mr. de la Iglesia testified before the Court during the 3-day trial in July 2023 that led to the Ownership Opinion, and so the Court is familiar with his background and scope of expertise. Briefly, Mr. de la Iglesia has held positions of senior director of technology, chief architect, and engineering director positions at multiple companies in the computer hardware, software, and information technology fields. His work has resulted in 68 issued US patents. He has spent his career architecting and managing the engineering efforts for systems with complex hardware, firmware and software interaction in fields such as network communications, security and enterprise storage.  He received a Master's degree in Electrical Engineering from Stanford University, where he was a National Science Foundation Graduate Research Fellow, and Bachelor's degree in Electrical Engineering with Highest Honors from the University of Florida.

Mr. de la Iglesia will present evidence regarding his observations and analysis of the Remaining DXP Assets and other software maintained by Debtors prior to the August 24 strict foreclosure and then moved to and disclosed and used by Respondents after that date.

      ii.      Non-expert witness

         **Cindy Chen Delano**: Adverse witness/cross-examination

         **Jim Learish**: Adverse witness/cross-examination

         **Amit Patel**: Adverse witness/cross-examination

         **Derek Fournier**: Adverse witness/cross-examination

         **Apurva Saxena**:  Adverse witness/Cross-examination

    B.    <u>The Invictus Parties' Witnesses:</u>  The Invictus Parties expect to call the following witnesses:

      i.      <u>Expert witness</u>.

Apurva Saxena.  Mr. Saxena was the International Director of UnumX 2, LLC, which at the time managed the software side of UnumX's business. In his role as International Director, he managed all of the tools that UnumX uses. He is familiar with the then-management of the GitHub Enterprise server.  Prior to working at UnumX, Mr. Saxena worked as International Director for the Debtors.

Mr. Saxena will provide evidence regarding his investigation regarding the Permanent Injunction and his conclusions that all use, disclosure, and access to the Remaining DXP Assets, Carnival Information, or Deliverables after August 25, 2023 was for the purpose of serving existing clients such as Disney, Virgin, and Carnival as permitted under the "safe harbor" provision in paragraph 2 of the Permanent Injunction.

      ii.      <u>Non-expert witness</u>.

10799158.v6

Cindy Chen Delano.   Mrs. Chen Delano may provide testimony regarding statements made in her declaration.  *See* Docket No. 660.

The Invictus Parties may call (i) any witness on any other party's witness list in this pretrial order, regardless of whether the party removes that witness from its list, (ii) any witness necessary to authenticate documents (to the extent necessary), and (iii) any witness to provide rebuttal or impeachment testimony, as appropriate.

C.      UnumX Witnesses: UnumX does not intend to call any witnesses in its case-in-chief, though it reserves the right to cross-examine witnesses called by other parties and to call rebuttal witnesses.

D.      Witness Objections: The following witnesses are subject to objections:

Carnival objects to Mr. Saxena being called as an expert witness rather than as a fact witness by the Invictus Parties. Carnival does not currently have other objections to any witness, subject to the identification of witnesses by other parties; Carnival reserves the right to raise objections in advance of or with the filing of the Joint Pretrial Order to be filed on December 26, 2023.

The Invictus Parties do not currently have objections to any witness, subject to the identification of witnesses by the other Parties.  The Invictus Parties reserve the right to raise objections in advance of or with the filing of the Joint Pretrial Order to be filed on December 26, 2023.

UnumX does not currently have objections to any witness, subject to the identification of witnesses by the other Parties.  UnumX reserves the right to raise objections in advance of or with the filing of the Joint Pretrial Order to be filed on December 26, 2023.

      E.      <u>Deposition Designations:</u> Carnival does not currently have any deposition designations, as witness depositions have just begun and are ongoing, and final transcripts are not yet available.  Carnival reserves the right to file and serve deposition designations in advance of the January 3, 2024 Hearing.

      The Invictus Parties do not currently have any deposition designations, as witness depositions have just begun and are ongoing, and final transcripts are not yet available.  The Invictus Parties reserves the right to file and serve deposition designations in advance of the January 3, 2024 Hearing.

      UnumX does not currently have any deposition designations, as witness depositions have just begun and are ongoing, and final transcripts are not yet available.  The Invictus Parties reserves the right to file and serve deposition designations in advance of the January 3, 2024 Hearing.

      F.      <u>Rebuttal Witnesses:</u> Each Party may call such rebuttal witnesses as may be necessary without prior notice thereof to the other Party.

## VIII.    Exhibits

      A.      <u>List of Exhibits:</u>  Attached hereto as Exhibit A is a preliminary and draft list of the Parties joint exhibits (the "<u>JX List</u>"). Because, *inter alia*, discovery is ongoing, the Parties reserve the right to amend the JX List (and, in fact, expects to add further exhibits to this list).  The Parties further reserve the right to introduce any exhibit at trial that has previously been filed with this Court in the context of this, or any related, proceeding.

      B.      As discovery is ongoing, the Parties reserve the right to object to any exhibit purportedly offered on any other party's exhibit list.

10799158.v6

IX.    **Demonstrative Exhibits**

A.    The Parties stipulate and agree that the following demonstratives may be used:

Carnival will provide its demonstrative exhibits at a time and on terms to be agreed upon by counsel.

The Invictus Parties will provide its demonstrative exhibits at a time and on terms to be agreed upon by counsel.

UnumX does not anticipate introducing any demonstrative exhibits.

X.    **Estimated Length of Trial**

Carnival estimates the trial will require 3-4 hours.

The Invictus Parties estimate that, based on the numbers of witnesses, the trial will require 1-2 days.

XI.    **Motions *in Limine* and Trial Briefs**

A.    <u>Motions in *Limine*</u>: Motions *in limine* shall not be separately filed. Any *in limine* requests shall be set forth, with citation to authorities and brief argument, in the proposed pretrial order. Each party shall be limited to three *in limine* requests, unless otherwise permitted by the Court. Briefing shall not be submitted on *in limine* requests, unless otherwise permitted by the Court.

As discovery is ongoing, and Carnival has yet to receive any other party's draft of the joint pretrial order, Carnival reserves the right to submit motions *in limine* with the Joint Pretrial Order to be filed on December 26, 2023.

B.    <u>Trial Briefs</u>: Any party may, but is not required to, file a trial brief, no less than five (5) business days prior to trial.  If filed, two (2) courtesy copies of each such brief

shall be delivered to chambers contemporaneously with its filing.  No trial brief shall be more than 30 pages in length without leave of the Court.

## XII.    Additional Matters

Carnival identifies the following additional matters: On December 21, 2023, the Court granted Carnival's motion to compel the production of certain documents by the Invictus Parties. Those documents have yet to be produced. In addition, as explained at the hearing on December 21, 2023, Carnival has not received a complete production of documents dated prior to August 25, 2023 from the Invictus Parties and UnumX.

The Invictus Parties identify the following additional matters: The Invictus Parties have not received a complete production of documents responsive to its first set of Requests for Production and no production of documents responsive to its second set of Requests for Production.

**IT IS SO ORDERED** that this Joint Pretrial Order shall control the subsequent course of the action unless modified at the trial of the action, or prior thereto, to prevent manifest injustice, or for good cause shown. Such modification may be made either on application of counsel for the Parties or by the Court.


Dated:                                          _____

J. Kate Stickles
United States Bankruptcy Judge


APPROVED AS TO FORM AND SUBSTANCE:


*/s/ Richard M. Beck*
Attorney for Movant Carnival

10799158.v6

*/s/ Tara C. Pakrouh*
Attorney for Respondents IGM Parties


*/s/ Aaron S. Applebaum*
Attorney for Respondent UnumX

10799158.v6